# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

JANUARY TERM, 1879.

EMANUEL SALZENSTEIN *et. al.*

*v.*

WILLIAM MAVIS.

1. TEXAS AND CHEROKEE CATTLE—*statute unconstitutional.* The statute entitled "An act to prevent the importation of Texas or Cherokee cattle into the State of Illinois," (Rev. Stat. 1874, p. 141,) so far as it attempts to prohibit the importation of such cattle, and prevent any person in this State from owning or having such cattle in possession between the first days of October and March following, is void, under the constitution of the United States, as interfering with inter-State commerce.

2. FORMER DECISION—*overruled.* The case of *Yeazel* v. *Alexander*, 58 Ill. 254, holding that the statute to prevent the importation of Texas and Cherokee cattle into this State, etc., was a proper and legitimate exercise of the police power of the State, and not in violation of the constitution of the United States, is overruled.

3. POLICE POWER OF STATE—*must not interfere with commerce.* While a State may pass sanitary laws, and laws for the protection of life, liberty, health or property within its borders, and may prevent persons and animals suffering under contagious or infectious diseases, etc., from entering the State, and, for the purpose of self-protection, may establish quarantine and reasonable inspection

laws, it may not interfere with transportation into or through the State, beyond what is absolutely necessary for its self-protection. The police power of a State can not obstruct foreign commerce, or inter-State commerce, beyond the necessity of its exercise.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. L. F. HAMILTON, for the plaintiffs in error:

The grounds of complaint, as alleged in the plaintiff's declaration, are, *first,* that the defendants unlawfully and wrongfully brought Texas and Cherokee cattle into Sangamon county; *second,* that they unlawfully owned them in said county, and *third,* that they unlawfully and wrongfully had them in possession in said county, from which said cattle the native cattle of the plaintiff contracted a disease. It is nowhere alleged how such bringing into the county, ownership or possession became unlawful and wrongful. It is not stated that defendants' cattle were in fact diseased, nor is it stated that defendants knew that their cattle were diseased at the time the plaintiff's contracted such disease. The declaration does not allege that the defendants were guilty of any fault or negligence whereby such disease was communicated, or that the disease was contagious or infectious.

In the absence of a statute, it is not in itself an act of culpable negligence to keep animals having an infectious disease. The owner can not be held responsible for the communication of the disease to other animals, without proof of some fault on his part, other than the mere keeping of such animals on his premises; nor does the fact that his neighbor keeps, to his knowledge, healthy animals upon an adjoining lot, alter the case. Shearman & Redfield on Negligence, sec. 193; *Fisher* v. *Clark,* 41 Barb. 329.

If the declaration shows no cause of action at common law, was there any valid statute giving a right of action? The declaration is apparently framed under "An act to amend an act entitled 'an act to prevent the importation of Texas and

Cherokee cattle into the State of Illinois.'" If this statute is in conflict with the constitution of the United States, the declaration shows no cause of action. That it is, see *Railway Co.* v. *Husen*, 5 Otto, 465.

It may be insisted that the part of the statute which renders the owners and possessors of such cattle in this State liable for all loss occasioned by such ownership or possession, is not in conflict with the Federal constitution.

The right to bring into the State this class of property can not be exercised, if the person owning or possessing it in the State is liable for such ownership or possession, since the right to bring into the State includes the right to possession and ownership in the State.

If the legislature may single out one particular article of commerce and make its simple ownership or possession by any person in the State the sole basis of liability for all loss suffered by reason of such ownership or possession, all inter-State commerce in this class of property is not only regulated by the legislature, but absolutely prohibited.

Messrs. McCLERNAND & KEYES, for the defendant in error:

The main question presented is the validity or constitutionality of the statute cited (Rev. Stat. 1874, p. 134,) as forming the foundation of the action in the court below. The plaintiffs in error assume the negative, and cite, as supporting their position, *The Hannibal and St. Joseph R. R. Co.* v. *Husen*, 5 Otto, 465. We deny the soundness of this position,—1, upon matters of fact, 2, upon principle, and 3, upon authority.

1.  THE FACTS.—The second and third counts proceed upon the fact that the defendants *owned* or *had in possession* in this State a number of cattle, the ownership or possession whereof in the State was prohibited by statute, and that by reason thereof the same cattle spread a disease, whereof the native ·cattle of the plaintiff became diseased and died.

The difference between the present case and the Missouri case, reduced to its lowest terms, amounts to this,—the former dealt with *persons* and their acts, being or transpiring within the territorial jurisdiction of the State, and with a statute regulating the *internal police* of the same, as to both persons and their acts therein, while the other dealt with persons and their acts, the *situs* of which was external to the territorial jurisdiction of the State, and with a statute affecting an extra-territorial operation.

"All those powers which relate merely to municipal legislation, or which may more properly be called *internal police,* are not surrendered or restrained ; and consequently, in relation to these the authority of the State is complete, unqualified and exclusive." Potter's Dwarris' Stat. and Const. L. 461 ; *Mayor, etc.* v. *Miln,* 11 Pet. 102.

The same power has often been exercised to discriminate betweeen animals and classes of animals, as, stallions and bulls of particular breeds, permitting some and prohibiting others.

2. PRINCIPLE—*police power.* The police power is a part of the law of public necessity, and, abstractly, it is limited only by that law. It is inherent and perpetual in society, and as to the social state stands as the corollary of the natural and inalienable right of personal self-defence. It is also a common law right. When not impaired by organic restraints it may be exercised in its fullest plenitude and vigor. It is commensurate with the sovereignty of the State, and is of necessity despotic, and individual rights of property, beyond express constitutional restraints, must yield to its force. Under it every one having property holds it under the implied liability that its use shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. Potter's Dwarris, 444; 2 Kent's Com. 338; *Russell* v. *Mayor of N. Y.* 2 Denio, 461–474; *Mayor of N. Y.* v. *Lord,* 17 Wend. 285; *Stone* v. *Mayor of N. Y.* 25 Wend. 157; *Van*

*Wormer* v. *Mayor of Albany,* 15 Wend. 264; Puffendorff, B. 2, ch. 6; *Commonwealth* v. *Alger,* 7 Cush. 53–85; *The Saltpetre Case,* 12 Coke, 13; *Wynhamer* v. *The People,* 13 N. Y. 402, id. 451; 4 Blackstone's Com. 162; *Stuyvesant* v. *Mayor of* N. Y. 7 Cow. 604; *Hart* v. *Mayor of Albany,* 9 Wend. 593; *Thorp* v. *R. & B. R. R. Co.* 27 Vt. 149; *Hyeman* v. *West,* 16 Barb. 353, S. C. 13 N. Y. 1; *Mayor, etc.* v. *Miln,* 11 Peters, 102.

3. OBJECTS OF ITS EXERCISE.—Generally these objects are to conserve the comfort, safety and welfare of society; particularly, they are to protect the lives, limbs, health and quiet of persons in the State, and all property therein; to prevent the spreading of conflagrations, even by razing houses to the ground; to abate nuisances; to repair highways; to purge public markets of infectious articles; to cast into the sea merchandize on shipboard infested with pestilence; to prohibit the storage of powder within cities and near to habitations and public highways; to restrain and regulate the erection of wooden buildings within cities and populous towns; to prohibit buildings from being used as hospitals for contagious diseases and the carrying on of noxious or offensive trades; the erection or raising of dams, which may cause stagnant water to stand or spread over lands near inhabited towns, villages or cities, thereby causing unwholesome exhalations dangerous to health and to life; to prohibit railroads from carrying freight, the legislature having first declared the same to be prejudicial to the public interest.

4. POLICE POWER—*distinction.*—This power antedates commerce, and its exercise forms a necessary condition, not only to the development, but the creation of commerce, and is therefore a higher and superior power. Both may be exercised, but when they come in conflict upon a vital point, upon principle the latter must yield. It has been held that State laws establishing quarantine and health laws of every description, carried even to the extent of destroying private

property, when infected with disease, or otherwise dangerous, fall within the proper bounds of State police. In this connection the following authorities are cited: Potter's Dwarris, 458; Cooley Const. Lim. 577, 584, 586 ; *Vanderbilt* v. *Adams,* 7 Cow. 348; *Mayor, etc.* v. *Miln,* 11 Pet. 102; *Gibbons* v. *Ogden,* 9 Wheat. 203 ; *Stillwell* v. *Raynor,* 1 Daley, 47 ; 12 How. U. S. R. 299 ; *Cisco* v. *Roberts,* 36 N. Y. 292 ; *Gilmore* v. *Philadelphia,* 3 Wall. 730; *Houston* v. *Moore,* 5 Wheat. 49 ; *Benedict* v. *Vanderbilt,* 25 How. Pr. R. 209.

5. POLICE POWER—*who to judge of its necessity.*—The State legislature are the sole judges as to the expediency of making police regulations interfering with the rights of persons and property, when such regulations are not prohibited by the constitution. *Varick* v. *Smith,* 5 Paige, 160.

Every sovereign State possesses, within itself, absolute and unlimited power, except so far as it is prohibited by the fundamental law. There is no arbiter of the measures necessary to protect life and property beyond the State itself. Such measures taken by the State must be held to be just and right, and from them, as an emanation of the ultimate power of the State, there can be no appeal. Potter's Dwarris, 455.

" The facts and condition of things which render a law necessary for the public welfare, are generally to be determined by the legislature."

All Texas or Cherokee cattle freshly brought from that State or the Indian country into this State, within the time prohibited, possess a capacity of imparting a deadly disease to native cattle. That being true, the legislature is a constitutionally competent judge of the occasion for such a prohibition and its limitations. There was competent power to impose some restraint, nor was the legislature bound to adjust nicely the character of the restraint. The power carries with it all reasonable means to effectuate it. It is not the province of the courts to supervise the exercise of this power, it being presumed that the legislature acted with wisdom and discretion. *Yeazel* v. *Alexander,* 58 Ill. 254.

6. The record does not show that defendants below were not citizens or residents of this State, owning or possessing the cattle within the State, otherwise than merely incidentally to the transportation of the cattle, as an act of commerce, through the State. On the contrary, the evidence showed that the defendants not only owned, but had the cattle in their possession in the town, county and State alleged in the declaration.

In conclusion, the recognition by the Supreme Court of the United States, in the case cited, of the power of the legislature to provide for a commission to inspect such cattle at the border of the State, in respect to their sanitary condition, preliminary to their admission into, or exclusion from the State, concedes, in principle, the whole question in controversy; for the concession of the power of inquiry is in effect the concession of the power of final determination,—the power of Congress to regulate commerce with foreign nations and between the States to the contrary notwithstanding.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case, brought by William Mavis in the circuit court of Sangamon county, against Emanuel Salzenstein and Charles Bois.

The declaration contains three counts. In the first it is averred that plaintiff was the owner of certain native cattle in a certain township in Sangamon county; that defendants unlawfully and wrongfully brought into said county and State certain Texas and Cherokee cattle, and that said Texas and Cherokee cattle communicated to the native cattle a pestilence and disease while the native cattle were lawfully grazing and being in said county, of which disease the native cattle died. The second count differs from the first in averring that the defendants unlawfully and wrongfully owned Texas and Cherokee cattle in the said county of Sangamon ; while the third count avers that the defendants unlawfully and wrongfully

were in possession of Texas and Cherokee cattle in the county of Sangamon, in the State of Illinois.

To the declaration the general issue was pleaded, and on a trial of the issue before a jury, the plaintiff recovered a verdict and judgment, to reverse which this writ of error was sued out by defendants, by whom it is claimed that no cause of action is set out in either count of the declaration.

The declaration was, doubtless, framed under the provisions of "An act to amend an act entitled 'an act to prevent the importation of Texas or Cherokee cattle into the State of Illinois,'" (Rev. Stat. 1874, page 141,) the first section of which declares: "That it shall not be lawful for any person or persons, railroad company or other corporation, or any association of persons, to bring into this State any Texas or Cherokee cattle, except between the first day of October and the first day of March following, of each year." The second section provides: "That it shall not be lawful for any person or persons, or railroad company or other corporation, or association of persons whatever, within this State, to own or have in possession or control any Texas or Cherokee cattle, at any time, which may have been brought into this State at any time except between the first day of October and the first day of March following, of each year."

In *Yeazel* v. *Alexander*, 58 Ill. 254, the validity and constitutionality of an act of the legislature, approved February 27, 1867, was considered, which act provided, that it should not be lawful for any one to bring into this State, or own or have in possession, any Texas or Cherokee cattle, and it was there held that the act was a mere exercise of the police power of the State, which has never been delegated to the Federal government, and which it is competent for the State to exercise.

The two sections of the act under which the declaration in this case was drawn, do not differ in principle from the act of 1867, which was held to be constitutional by this court in the case of *Yeazel* v. *Alexander;* and were we not concluded by a higher authority, we would be inclined to adhere to the con-

struction of the statute given by the court in that case. But the question whether a statute of a State violates the constitution of the United States, is one to be settled and determined by the Supreme Court of the United States, and however much a State court might feel disposed to differ from the view of the Federal court, the decision of the Federal court must control, and it is the duty of the State courts to conform to and follow the decision of the Supreme Court of the United States on a question of that character.

The only question, therefore, to be considered is, whether the Supreme Court of the United States has held the act in question to be in conflict with the Federal constitution. If it has, the judgment will have to be reversed.

On the 23d day of January, 1872, the legislature of the State of Missouri passed an act, the first section of which provided: "That no Texas, Mexican or Indian cattle shall be driven or otherwise conveyed into or remain in any county in this State between the first day of March and the first day of November, in each year, by any person or persons whatsoever. * * * *Provided,* that when such cattle shall come across the line of this State loaded upon a railroad car or steamboat, and shall pass through this State without being unloaded, such shall not be construed as prohibited by this act; but the railroad company or owners of a steamboat performing such transportation shall be responsible for all damages which may result from the disease called the Spanish or Texas fever, should the same occur along the line of such transportation." The second section declares: "If any person or persons shall bring into this State any Texas, Mexican or Indian cattle in violation of the first section of this act, he or she shall be liable in all cases for all damages sustained on account of disease communicated by said cattle."

An action having been brought in the State of Missouri against the Hannibal and St. Joseph Railroad Company for damages claimed to have been caused by a violation of the act, it was contended by the railroad company that the act was

in conflict with sec. 8, art. 1, of the constitution of the United States, which declares that Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes. The objection having been overruled in the State courts, the case was taken to the Supreme Court of the United States. It was there held, that the statute was more than a quarantine regulation and not a legitimate exercise of the police power of the State, and that the act was in conflict with the constitution of the United States, which has been heretofore cited. In the opinion it is said: "While we unhesitatingly admit that a State may pass sanitary laws, and laws for the protection of life, liberty, health or property within its borders; while it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, etc., from entering the State; while, for the purpose of self-protection, it may establish quarantine, and reasonable inspection laws, it may not interfere with transportation into or through the State, beyond what is absolutely necessary for its self-protection. * * * The statute of Missouri is a plain intrusion upon the exclusive domain of Congress. It is not a quarantine law. It is not an inspection law. * * * Such a statute, we do not doubt, it is beyond the power of a State to enact. To hold otherwise would be to ignore one of the leading objects which the constitution of the United States was designed to secure. In coming to such a conclusion, we have not overlooked the decisions of very respectable courts in Illinois, where statutes similar to the one we have before us have been sustained. *Yeazel* v. *Alexander*, 58 Ill. 254. Regarding the statutes as mere police regulations, intended to protect domestic cattle against infectious disease, these courts have refused to inquire whether the prohibition did not extend beyond the danger to be apprehended, and whether, therefore, the statutes were not something more than exertions of police power. That inquiry, they have said, was for the legislature, and not for the courts. With this we can not concur. The police power of a State

can not obstruct foreign commerce or inter-State commerce beyond the necessity for its exercise, and, under color of it, objects not within its scope can not be secured at the expense of the protection afforded by the Federal constitution." *Railway Company* v. *Husen,* 5 Otto, 465.

We have quoted quite liberally from the decision, so that it may be seen the decision is broad enough to include the statute of our State, as well as that of the State of Missouri. Indeed, the doctrine of the *Yeazel case,* where our statute was involved and sustained, is expressly condemned in the decision.

It is, however, contended by plaintiff, that the facts averred in the second and third count of the declaration distinguish this case from *Hannibal and St. Joseph Railroad Co.* v. *Husen,* in this: that these counts proceed on the theory that defendants owned or had in possession cattle in this State, the ownership or possession whereof in this State was prohibited by our statute, while in the case cited the Missouri statute prohibited the transportation of cattle from another State through the State of Missouri. We can not, however, understand how the right to transport and bring into this State Texas cattle can be exercised, if the owning or possessing such cattle within the State is prohibited. The right to transport from another State into this State necessarily includes the right of possession and ownership in this State. If the latter is prohibited, the former right must fall with it. If the legislature has the constitutional right to declare that a person shall not possess or own a certain kind of property within the State which may be raised or produced in another State of the Union, it logically follows that all inter-State commerce in such property is both regulated by the legislature and also prohibited. We do not understand that the legislature can do, indirectly, that which the constitution of the United States prohibits to be done, directly. Such, however, would be the case if the theory of the plaintiff in this case was sanctioned.

Under the decision cited, which must control this case, we perceive no tenable ground upon which the judgment can be sustained. It will, therefore, be reversed, and the cause remanded.

*Judgment reversed.*