*Ex parte* KINNEBREW.

(*Circuit Court, N. D. Georgia.* March 19, 1888.)

1. INTOXICATING LIQUORS—CONSTITUTIONALITY OF ACTS—REGULATION OF COM-
     MERCE—GEORGIA LOCAL OPTION LAW.
        The Georgia local option act of September 18, 1885, which, after prohibit-
     ing the sale of intoxicating liquor, provides, "that nothing in this act shall be
     so construed as to prevent the manufacture, sale, and use of domestic wines
     or cider," etc., in excepting domestic wines from the prohibition must be taken
     as also excepting other wines, and so construed is not in violation of Const. U.
     S. art. 1, § 8, giving to congress the power to regulate interstate commerce.
2. COURTS—FEDERAL JURISDICTION—FEDERAL QUESTION.
        Whether the objectionable part of the Georgia local option act of Septem-
     ber 18, 1885, being separated, the rest may stand alone, is not a question aris-
     ing under the United States constitution, or a law or treaty of the United
     States.
3. SAME—DUE PROCESS OF LAW.
        When a defendant has been indicted for violation of the Georgia local op-
     tion act of September 18, 1885, the validity of which is for the state court to

determine, has been tried by a jury according to the usual forms, and been heard in the supreme court of the state, and the case, for want of any federal question, has been rejected at the United States supreme court, his imprisonment is not "without due process of law."[1]

Petition for Writ of *Habeas Corpus.*

The relator's case is thus stated in his petition:

"The petition of Columbus D. Kinnebrew, who alleges that he is a citizen of the United States and of the state of Georgia, respectfully showeth that he is illegally restrained of his liberty in violation of article first, section eight, and paragraph third of the constitution of the United States by being deprived of his liberty by L. P. Thomas, the sheriff of Fulton county, in the Northern district of Georgia, by virtue of an alleged accusation, with the verdict and judgment of the court, or sentence, rendered thereon, which was depending in, tried, and said verdict and sentence rendered by the city court of Atlanta, of said Fulton county; a copy of which said accusation, verdict, and sentence is hereto attached as a part of this petition, and is marked 'Exhibit A.' Petitioner shows that he was accused on said accusation, tried, and found guilty, and sentenced by said court as and at the times stated in said Exhibit A, (said conviction, verdict, and sentence being had and pronounced on 6th day of July, A. D. 1887,) for an alleged violation of what is known as the 'General Local Option Liquor Law,' which said alleged law is a pretended act of the general assembly of Georgia, approved by the governor 18th day of September, 1885, entitled an 'Act to provide for preventing the evils of intemperance, by local option in any county in this state, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county; to provide penalties for its violation, and for other purposes.' The case made by the testimony and submitted to the jury being that petitioner had bartered and sold for a valuable consideration, alcoholic, spirituous, malt, and intoxicating liquors to one R. S. Ogborn, and other persons, on the 26th day of April, 1887, and other days since 1st day of July, 1886; said liquor not being domestic wines, nor wines sold for sacramental purposes, nor pure alcohol. Petitioner shows that the jury were instructed that the law which petitioner was charged with violating was said general local option liquor law, as appears from the charge of the court, which is a part of the record of said case in said city court of Atlanta, and is as follows: 'The jury is instructed that it is unlawful for any person, within the limits of any county of this state in which what is known as the "General Local Option Liquor Law" is of force, to sell or barter for valuable consideration, either directly or indirectly, or to give away to induce trade at any place of business, or furnish at any other public places, any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters or other drinks, which, if drank to excess, will produce intoxication.' Petitioner shows that the provisions of the said general local option liquor law which relate to the prohibition of or rendering illegal the sale of liquor, and to what liquors, bitters, or drinks are prohibited to be sold or given away, are the sixth and eighth sections of said act. All of the other provisions of said pretended act relate to the method of invoking the exercise of the local option provided for therein, of holding an election, canvassing, and declaring the result, with penalties for fraud in such an election, or for the violation of the hereinafter recited sections of said act. Said sixth and eighth sections are as follows:

---

[1] Respecting the constitutional guaranty of due process of law, see Hutson v. Protection Dist., (Cal.) 16 Pac. Rep. 549, and note; People v. Haug, (Mich.) 37 N. W. Rep. 21; Savage v. Com., (Va.) 5 S. E. Rep. 565; School-Dist. v. Seminary, (Pa.) 12 Atl. Rep. 857.

"'Section Sixth. That if a majority of the votes cast at any election held as by this act provided shall be "Against the sale," it shall not be lawful for any person within the limits of such county to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or furnish at other public places, any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating or other drinks which, if drank to excess, will produce intoxication.'

"'Section Eighth. That nothing in this act shall be so construed as to prevent the manufacture, sale, and use of domestic wines or cider, or the sale of wines for sacramental purposes: provided such wines or cider shall not be sold in bar-room by retail; nor shall anything herein contained prevent licensed druggists from selling or furnishing pure alcohol for medicinal, art, scientific, and mechanical purposes.'

"Petitioner shows that it was for an alleged violation of this pretended act as above set forth—for the alleged sale or barter of liquors, bitters, or drinks not for sacramental purposes, and the same not being domestic wine or cider or pure alcohol—that petitioner was tried as aforesaid, and is now retained and deprived of his liberty. Petitioner further shows that the various steps necessary to be done to have the election spoken of in section sixth of said act, above quoted, called and ordered for the county of Fulton aforesaid, were duly carried out as prescribed in said pretended act. Petitioner shows that a petition as prescribed in said act, asking that such election be held for Fulton county aforesaid, was presented to the ordinary of said county, and that an election as prayed was ordered thereunder, and said election held on the 26th day of November, 1885, and that said election resulted in a majority 'Against the sale,' of 228 voters, and that said result had been proclaimed and published under the requirements of said act, and that said act, if valid and constitutional, had gone into effect, and was of force, on and after 1st day of July, 1886. But petitioner alleges that said law is unconstitutional and void as in violation of the paragraph, section, and article of the constitution of the United States first aforesaid, in this: that said act above quoted attempts to discriminate in favor of domestic wines and ciders, as specified in the eighth section thereof, and against all other wines or liquors of every sort not domestic; said discrimination being contrary to said article, section, and paragraph of the constitution of the United States. Petitioner shows that his said case on said accusation has been carried by him to the supreme court of Georgia, and that said court has affirmed said sentence and judgment of said city court of Atlanta in his case; that said judgment of affirmance has been made the judgment of the said city court; that no further appeal, writ of error, or any other way of escaping said sentence and judgment remains which can now be had or taken in any state court, nor of reviewing the same. Petitioner shows that he is now restrained of his liberty, and deprived of the same, by said L. P Thomas, sheriff of Fulton county aforesaid, under said judgment and sentence of said city court; that said judgment and sentence and said restraint and deprivation of petitioner's liberty thereunder are in violation of said article first, section eighth, paragraph third of the constitution of the United States, and are void, and petitioner's restraint and deprivation of liberty without color of law,—unconstitutional as aforesaid,—null and void. Petitioner shows that said general local option liquor act has not been declared to be unconstitutional by the supreme court of Georgia."

A writ of *habeas corpus* having issued, the case is submitted on the following agreed statement of facts:

(1) "That this matter be heard before the Honorable DON A. PARDEE, judge of said court, at New Orleans, La., on Monday, the 13th day of February, 1888. (2) That the statements contained in the petition for writ of *habeas corpus*

are true.  (3) That in addition to said statements the following are also true, viz.:   After the said judgment of the said city court was affirmed by the supreme court of Georgia, an application for the allowance of a writ of error to the judgment of the said supreme court, accompanied by a full and complete transcript of the record in said case, was presented to one of the judges of the supreme court of the United States, to-wit, Mr. Justice FIELD, and the same was by him handed to another judge of said court, to-wit, Mr. Justice HARLAN, who, upon an inspection of said application, and examination of said record, refused to allow said writ, as follows:

" 'SUPREME COURT OF THE UNITED STATES.

" 'WASHINGTON, December 2, 1887.

" ' GENTLEMEN:   Mr. Justice FIELD handed me the record and your brief in *Kinnebrew* v. *State of Georgia* for an examination in connection with application by your client for the allowance of a writ of error to the supreme court of the state of Georgia.   The allowance of the writ must be denied.   I am unable to find in the record even any intimation that a federal question was raised or decided, or that there was any claim upon the part of your clients of rights under the constitution of the United States.   The claim in the grounds for a new trial in the court of original jurisdiction, that "the verdict is against the law," is insufficient to show that a federal question was raised, or that a right under the constitution of the United States was asserted, within the meaning of the statutes giving the supreme court of the United States power to review the judgments of the highest court of a state.   I return the papers by mail.   Res'py, your obdt. servant,

" ' JOHN M. HARLAN, Circuit Justice assigned to 5th circuit.
" ' *To Messrs. Arnold & Arnold, Attorneys at Law.*' "

*Howell C. Glenn* and *C. D. Hill,* for the State.
*Calhoun, King & Spalding,* for relator.

PARDEE, J.   The general "local option" act of the legislature of the state of Georgia, approved September 18, 1885, as set forth in the agreed statement of facts on file, in so far as it discriminates in favor of domestic wines, and against the importation and sale of wines manufactured in other states and foreign countries, is in violation of the constitution of the United States.   *Welton* v. *Missouri,* 91 U. S. 275; *Tiernan* v. *Rinker,* 102 U. S. 123; *Webber* v. *Virginia,* 103 U. S. 344; *Salzenstein* v. *Mavis,* 91 Ill. 391; *Vines* v. *State,* 67 Ala. 73; *McCreary* v. *State,* 73 Ala. 481. The domestic wines mentioned in the eighth section of the act are such wines as are made within the state, and probably from fruits grown therein. See *Com.* v. *Giltinan,* 64 Pa. St. 100; Laws Ga. 1887, p. 21.   If it is considered that the sixth section of the act prohibits the sale of imported wines, and wines made in other states, under the head of intoxicating liquors, or other drinks which, if drank to excess, will produce intoxication, while the eighth section permits the sale of domestic wines, then the unconstitutional discrimination is apparent on the face of the act, and it can only be eliminated by striking from the act the exception in favor of domestic wines; or, by construction, inserting in the act an exception in favor of imported wines and wines from other states.   The one means to strike out something the legislature did enact, and the other is to insert something that the legislature did not enact, in terms; but is

the legal implication arising from what the legislature did enact. In *McCreary* v. *State, supra,* the supreme court of Alabama, following the case of *Powell* v. *State,* 69 Ala. 10, and citing *Tiernan* v. *Rinker,* 102 U. S. 123, held, in a case strictly analogous to the present, that the illegal proviso or exception of the statute might be stricken out, and the remainder permitted to stand unaffected thereby, and thus affirmed a conviction for doing that which the legislature of Alabama enacted might be done. In *Spraigue* v *Thompson,* 6 Sup. Ct. Rep. 988, the supreme court of the United States, in reversing the supreme court of Georgia in the *Pilotage Cases,* 69 Ga. 409, says in regard to the principle of construction which disregards illegal exceptions, and leaves the rest of the law to stand as a separable part of the statute:

"The insuperable difficulty with the application of that principle of construction to the present instance is that, by rejecting the exceptions intended by the legislature of Georgia, the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what any one can say it would have enacted, in view of the illegality of the exceptions."

The case of *Tiernan* v. *Rinker, supra,* passed upon a tax law of Texas requiring an annual tax to be paid upon the occupation of liquor selling generally, but exempting wines or beer manufactured in the state, and the supreme court held that the statute was inoperative so far as it made a discrimination against wines and beer imported from other states; that the sale of these products must stand on the same footing as to tax as the wines and beer manufactured in the state, but that there was no objection to the tax as laid on the sellers of brandies and whiskies and other alcoholic drinks. It appears to be doubtful that the legislature of Georgia intended the said act to be separable and to stand as the law-makers' will, without the protection therein afforded to Georgia wines. See subsequent act, approved September 12, 1887, taxing dealers in domestic wines. Laws Ga. 1887, p. 21. And no one can authoritatively say that, without such protection to Georgia wines, the people would have given the majority vote necessary to put the act in force; nor can any one say that with a provision exempting all wines that the legislature would have enacted, or the people would have adopted, the act. In the case of *Weil* v. *Calhoun,* 25 Fed. Rep. 865, decided in this court in 1885, Judge Mc-Cay, in commenting on this same Georgia law, and the unconstitutional discrimination, said:

"It is possible, as I think, to separate this obnoxious clause—protecting domestic wines from the operation of the act—from the rest of it; declare it void, and let the broad prohibition clause have its full effect. I am not, however, as clear on this branch of the subject as I would like to be."

The consideration of the foregoing cases, and the reason of this particular case, lead me to the conclusion that *Tiernan* v. *Rinker, supra,* is the proper guide to follow in construing this Georgia act, and that accordingly the said act is to be held inoperative so far as it discriminates against wines imported from other states; that the sale of these products must stand on the same footing as the domestic wines of Georgia; and

that there is no objection to the general prohibition of the sale of alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters or other drinks which, if drank in excess, will produce intoxication, other than wines imported or domestic. This strikes out no clause, no provision, of the statute, but merely gives the statute the construction that the legislators must have intended in view of their acquaintance with and sworn intent to support the constitution of the United States. Under this construction of the statute, as the relator shows that he was not convicted for selling wines imported or otherwise, he presents no case for relief on the ground that he is in custody in violation of the constitution of the United States. Of course, if the Alabama view be taken, and the statute held to be valid when sufficiently purged by striking out the exception as not enacted, then the relator was properly convicted, and is entitled to no relief. And I think it is proper to say that my examination of the authorities leads me to the conclusion that the same result as to relief in this case follows if, as claimed by relator's counsel, the said act is not separable, so as to stand as a valid law with the illegal exception stricken out. As has been already stated, according to the agreed case, the relator, Kinnebrew, was not prosecuted and convicted under or by reason of the unconstitutional proviso or exception in the said act, but under the part of the act that the legislature had the power—if it had the will—to enact. Whether that part can stand as a separable part of the statute does not depend upon the constitution or laws of the United States, but upon general principles of legislative construction; and if it be conceded that it cannot stand because the statute is an entirety, and not separable, then the case is very similar to *In re Brosnahan*, decided by Mr. Justice MILLER on circuit, and reported in 18 Fed. Rep. 62. In that case Mr. Justice MILLER, conceding that the claim that the oleomargarine law of Missouri "is an unwarranted invasion of public and private rights, an assumption of power without authority, in the nature of our institutions, and an interference with the natural rights of the citizen and of the public, which does not come within the province of legislation," said:

"This objection to the statute is one which we cannot consider in this case. As already stated, when a writ of *habeas corpus* is issued by the circuit court in behalf of one in custody of a state officer under judicial proceedings in state courts, under state laws, the only inquiry we can make is whether he is held in violation of the constitution or of a law of congress, or a treaty of the United States. The act in question may be in conflict with the constitution of the state without violating the constitution or any law or treaty of the United States. It may be in excess of the powers which the people of Missouri have conferred on their legislative body, and therefore void, without infringing any principle found in the constitution, laws, or treaties of the United States."

It is clear that the relator cannot be said to be in custody in violation of the third paragraph, section 8 of article 1 of the constitution of the United States, which relates to regulations of commerce with foreign nations, and among the several states, and with the Indian tribes, since, as has been stated, he was not convicted under that part of the statute which discriminates against the importation and sale of other than do-

mestic wines.    Relator's case would be a very different one if he had been indicted, tried, and convicted for importing and selling foreign wines, or the wines from other states, in the state of Georgia, or if that even had been his real offense, though not shown by the indictment.

Nor do I think it can be fairly said that the relator has been deprived of his liberty without due process of law in violation of the fourteenth amendment of the constitution of the United States.    He has been indicted by a grand jury for an offense punishable by the letter of the acts on the statute-books; tried by a jury, with all the forms which from time immemorial have been held to be "due process of law;" his case has been heard in the supreme court of his state, and been rejected at the supreme court of the United States as not involving any federal question, and should be considered as finally decided.    See Cooley, Const. Lim. (1st Ed.) 355; *Hurtado* v. *California*, 110 U. S. 537, 4 Sup. Ct. Rep. 111, 292.    It is probably true that not every legislative enactment is "due process of law," but where an alleged statute does not conflict with any provision of the federal constitution, and, if void at all, is only void because of the application of general principles of legislative construction, and where under such a statute a person is indicted by a grand jury and regularly tried, convicted, and sentenced, with full opportunity to make all his defenses, in a state court, which, of course, decides upon the validity of the statute under which it proceeds, I am of the opinion that he has had "due process of law," and particularly that no case is thereby made to authorize a federal court to interfere and release the convict on the ground that he is in custody in violation of the constitution of the United States.    To interfere in such a case would be an assumption of appellate jurisdiction by the circuit courts in criminal cases in the state courts in which no distinctive, if any, federal question is involved.

The writ of *habeas corpus* in this case will be discharged, and the relator remanded to the custody of the sheriff of Fulton county, Ga., with costs.